**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| ROBERT CSECH, | Case No. 3:19-CV-00288-MMD-CLB |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| v. | [ECF No. 52] |
| McKEE, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Robert Csech ("Csech") against Defendant Dr. McKee ("McKee"). Currently pending before the Court is McKee's motion for summary judgment. (ECF No. 52.) Csech responded, (ECF No. 59), and McKee replied. (ECF No. 60.) For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 52), be granted.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Csech is an inmate currently in the custody of the Nevada Department of Corrections ("NDOC") and is currently housed at the Northern Nevada Correctional Center ("NNCC"). (ECF Nos. 3, 4.) On May 3, 2019, proceeding *pro se*, Csech filed an inmate civil rights complaint pursuant to 42 U.S.C. § 1983, ("Complaint"), seeking, monetary damages. (ECF No. 4.) Although Csech has three strikes under 28 U.S.C. § 1915(g), the District Court screened Csech's Complaint under the imminent danger exception and 28 U.S.C. § 1915A on February 10, 2020. (ECF No. 3.) The Court allowed Csech to proceed on one claim for Eighth Amendment deliberate indifference to serious medical needs against McKee, and dismissed, with prejudice, Counts II and III, and dismissed Nurse Terry and James Dzurenda from the entire action. (*Id.*)

---

[1]     This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Csech's Complaint alleges the following: On February 6, 2019, Csech had an appointment with Dr. McKee for "purple lower arm-hand of poor-bad blood flow from heart." (ECF No. 4 at 4.) Csech's appointment was also for a brain injury damage and vision loss in his left eye. (*Id.*) McKee then "specifically told [Csech] of awareness of the poor-bad blood flow and the noticeable brain damage. . . ." (*Id.*) McKee then "specifically told [Csech] that further medical care [was] needed for treatment!" (*Id.*) Csech asserts he has had "no medical care nor any treatment" since February 6, 2019. (*Id.*) Csech further asserts that his "left arm is purpling as [is his] right arm, causing pain on heart, diminished walking [ability in] legs, and loss of more of left eyesight and upper eyes loss." (*Id.*) For these reasons, Csech alleges that he is suffering and debilitated. (*Id.*) On June 24, 2021, McKee filed a motion for summary judgment. (ECF No. 52.) McKee asserts that she is entitled to summary judgment because Csech failed to fully exhaust the administrative grievance process prior to filing his Complaint. (*Id.* at 6.)

In Csech's July 20, 2021, opposition, (ECF No. 59), Csech alleges he was strangled by a Doe correctional officer on April 5, 2019. (ECF No. 59 at 5.) Csech further alleges Warden Baca was present during the strangulation and immediately after the strangulation when Csech was threatened "over, over, [and] over" by a Doe sergeant who stated, "you know what I mean, no more paperwork!!" (*Id.*) For these reasons, Csech alleges he was "in dire need of medical aid by [Dr.] McKee," which was not given, and that the alleged threats made by the Doe sergeant in the presence of Warden Baca, after the alleged strangulation, made any administrative remedy, i.e., a grievance or kite, effectively unavailable. (*Id.* at 4-6.) Csech asserts that McKee is "unable to prove that [an] administrative remedy was available." (ECF No. 59 at 6.) Csech's response relies on the exhibits provided in McKee's previous filings. (*Id.*)

McKee replied on August 12, 2021, asserting that Csech's response, (ECF No. 59), does not "allege he filed a grievance, or was prevented from filing a grievance." (ECF No. 60 at 3.) McKee's reply further asserts Csech's opposition "fails to put forth sufficient evidence to raise a genuine issue of material fact capable of defeating [McKee's] motion"

for summary judgment. (*Id.*)

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no

reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The nonmoving party must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and

meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

**III.   DISCUSSION**

**A.   Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally protected right by (2) a person or official acting under the color of state law. *Anderson*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

**B.   Eighth Amendment Deliberate Indifference to Serious Medical Needs**

**1.   Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his

6

particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 2. NDOC's Inmate Grievance System

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* ECF Nos. 52-3, 52-4.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (ECF No. 52-3 at 11.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's grievance at this, and all subsequent levels." (*Id.* at 12.) NDOC staff is required to respond within forty-five days. (*Id.*) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a justification to continue to the first level." (*Id.* at 13.) "A First Level grievance should be reviewed, investigated and responded to by the Warden at the institution where the incident being grieved occurred." (*Id.* at 12.) "The Warden may utilize any staff in the development of a grievance response." (*Id.*) The time limit for a response to the inmate . . . is forty-five" days. (*Id.* at 14.) Within five days of receiving a dissatisfactory First Level response, the inmate may appeal to the Second Level, which is subject to still-higher review. (*Id.*) Officials are to respond to a Second Level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.* at 15.) Once an inmate receives a response to the Second Level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in federal court.

///

///

### 3.     Exhaustion of Csech's Claims

Csech's claim against McKee arises from McKee allegedly failing to provide needed medical treatment to Csech after his February 6, 2019, appointment. (ECF Nos. 3, 4.) Csech claims that McKee informed him that he would need follow up treatment for his purpling arms, loss of eyesight, and diminished ability to walk. (ECF No. 4 at 4.) Csech further claims that on April 5, 2019, he was strangled and threatened by a Doe correctional officer, and Warden Baca was present when it happened. (ECF No. 59 at 4-6.) Csech claims that these threats, paired with the strangulation, prevented him from accessing administrative remedies by way of intimidation. (*Id.*)  McKee argues Csech did not properly exhaust his available administrative remedies before filing suit with the federal court, as he failed to follow the grievance procedure outlined by AR 740. (ECF No. 52.) Specifically, McKee contends that Csech failed to file any "grievance relating to the claims against Dr. McKee." (*Id.* at 6.) Csech's opposition asserts that McKee, and defense counsel, are unable to prove that an administrative remedy was available. (ECF No. 59 at 6.) Csech states his argument can be shown by discovery provided to him by defense counsel. (*Id.*)[2],[3]

A review of the authenticated evidence shows that Csech did not file a Grievance regarding the claims asserted in the Complaint. (*See* ECF Nos. 52-1, 52-2.)[4] AR 740 expressly requires that an inmate must file an informal grievance and proceed through each level of grievance thereafter in order to exhaust the administrative remedies process. (*See* ECF No. 52-3.) AR 740 requires an inmate to file an informal grievance within six months "if the issue involves . . . civil rights claims," and an inmate's failure to

---

[2]     There are no exhibits attached to Csech's response. (ECF No. 59.)

[3]     The Court has liberally construed Csech's opposition as incorporating by reference the exhibits provided by McKee in her motion for summary judgement. (ECF Nos. 52-1, 52-2, 52-3, 52-4.)

[4]     ECF 52-2, the declaration of Rober Hartman, refers to this case as *Csech v. Dzurenda, et al.*, however, it correctly identifies the case number as 3:19-cv-00288-MMD-CLB.

1  submit an informal grievance within this period "shall constitute abandonment of the
2  inmate's claim at this, and all subsequent levels." (*Id.* at 11-12.) Csech cannot circumvent
3  the requirements of AR 740 by not completing the grievance process. Therefore, the
4  Court finds that Csech failed to exhaust his administrative remedies pursuant to AR 740,
5  prior to initiating this action.
6        The burden now shifts to Csech "to come forward with evidence showing that there
7  is something in his particular case that made the existing and generally available
8  administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing
9  *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Csech provides no
10 evidence to show that administrative remedies were unavailable to him. Csech instead
11 argues that McKee is unable to prove that an administrative remedy was available. (ECF
12 No. 59.) However, Csech has failed to provide any evidence to support his assertion.
13 Csech has neither alleged, nor provided evidence of, anyone at NDOC failing to establish
14 "locked boxes where all inmates have access to submit their grievances directly to the
15 box." (*See* ECF No. 52-3 at 3.) Csech fails to show that any emergency grievance was
16 filed, or that Csech even attempted to file or hand an emergency grievance to any NDOC
17 staff member. (*See id.*) Csech also fails to allege or provide evidence that anyone at the
18 NDOC failed to make grievance forms accessible through "unit staff, the unit caseworker
19 or in the Institutional Law Library." (*Id.*) Csech has failed to assert or show that anyone at
20 NDOC restricted his access to grievance forms. Furthermore, Csech fails to provide
21 evidence that anyone at NDOC failed or refused to either collect a grievance from him or
22 failed to enter a grievance that was made into NOTIS. (*Id.* at 2-3.)
23       Additionally, Csech has failed to show, through authenticated evidence, his claim
24 that McKee either recommended that he be treated again or that McKee failed to treat
25 him subsequent to his February 6, 2019, appointment. Additionally, Csech's assertion
26 that an administrative remedy was unavailable is unavailing. The alleged assault and
27 threats occurred, allegedly, almost two months after Csech's February 6, 2019,
28 appointment with McKee. Csech failed to file a grievance concerning McKee's alleged

lack of medical attention within these two months. Moreover, Csech did file a grievance on April 1, 2019, which shows that he had access to an administrative remedy within this window of time. (ECF No. 51-1 at 15.)

Exhaustion plays a very important role in both the prison and court settings. "Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'" *Woodford v. Ngo,* 548 U.S. 81, 89 (2006) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145 (1992)). Exhaustion also "promotes efficiency." *Id.* Csech does not provide any evidence that he exhausted his administrative remedies, and he does not present any evidence that such remedies were effectively "unavailable." Accordingly, the Court concludes that Csech failed to exhaust available administrative remedies prior to filing this action, and McKee's motion for summary judgment should be granted.

**IV.    CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 52), be granted.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

///

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 52), be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE THIS CASE.**

DATED: October 1, 2021.

_____
**UNITED STATES MAGISTRATE JUDGE**